FILED

JUN 14 2010

NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: | ) BAP No. NC-09-1294-PaJuKw |
| | ) |
| FRED G. LABANKOFF, | ) Bk. No. 09-10970 |
| | ) |
| Debtor. | ) Adv. No. 09-1048 |
| _____ | ) |
| | ) |
| FRED G. LABANKOFF, SWETLANA | ) |
| LABANKOFF, LUDMILA SHPITJ, and | ) |
| SHPITJ LABANKOFF GENERAL TRUST, | ) |
| | ) **M E M O R A N D U M**[1] |
| Appellants, | ) |
| | ) |
| v. | ) |
| | ) |
| GMAC MORTGAGE, LLC, ETS SERVICES, | ) |
| LLC, and HOMECOMINGS FINANCIAL, | ) |
| LLC, INVESTORS TRUST MORTGAGE | ) |
| CORP., and DAVID IZETT, | ) |
| | ) |
| Appellees.[2] | ) |
| _____ | ) |

Argued and Submitted on May 18, 2010
at San Francisco, California
Filed - June 14, 2010

_____

[1] This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may have
(see Fed. R. App. P. 32.1), it has no precedential value. See
9th Cir. BAP Rule 8013-1.

[2] Appellees GMAC Mortgage, LLC, ETS Services, LLC, and
Homecomings Financial appeared and filed a single brief through
counsel. Appellees Investors Trust Mortgage Corp. and David Izett
did not appear or file a brief, and mail sent by the Clerk to the
address provided by Appellants was returned as undeliverable.
Appellants designated U.S. Trustee as an Appellee in the notice of
appeal, but U.S. Trustee has not appeared or filed a brief, and we
can discern no reason why it would have an interest in the outcome
of this appeal. The Panel has therefore deleted U.S. Trustee as
an Appellee in the caption of this Memorandum.

-1-

Appeal from the United States Bankruptcy Court
for the Northern District of California

Honorable Alan Jaroslovsky, Bankruptcy Judge, Presiding

_____

Before: PAPPAS, JURY and KWAN[3], Bankruptcy Judges

Chapter 7[4] debtor Fred G. Labankoff ("Debtor" and together with other appellants, "Appellants") appeals the bankruptcy court's order abstaining from deciding an adversary proceeding commenced by Appellants against Appellees GMAC Mortgage, LLC ("GMAC"), ETS Services, LLC ("ETS") and Homecomings Financial, LLC ("Homecomings" and together, "Appellees"), and dismissing the adversary proceeding without prejudice.[5]  We AFFIRM.

**FACTS**

These facts are reconstructed from the bankruptcy court's docket and the excerpts of record submitted by Appellees.[6]

_____

[3]  The Honorable Robert N. Kwan, United States Bankruptcy Judge for the Central District of California, sitting by designation.

[4]  Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532 and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. The Federal Rules of Civil Procedure are referred to as Civil Rules.

[5]  Appellants' brief contains numerous arguments relating to a separate appeal before this Panel concerning conversion of Debtor's bankruptcy case from a chapter 11 case to chapter 7, Labankoff v. U.S. Trustee, (BAP no. NC-09-1300), which we dispose of in a separate Memorandum.  We therefore focus in this Memorandum solely on issues relating to the adversary proceeding.

[6]  Appellants have not complied with several Rules relating to bankruptcy appeals, nor with several BAP Rules.  In particular, their brief violates BAP Rules 8010(a)(1) and (c)(1) limiting
(continued...)

-2-

This appeal apparently deals with disputes between Appellants and GMAC and Homecomings, the holders of the first and second deeds of trust on residential property owned by Appellants.[7]

Appellant Shpitj Labankoff Trust (the "Trust") was created on August 28, 1978; Debtor is trustor and trustee; and Debtor and Appellants Swetlana Labankoff and Ludmilla Shpitj are beneficiaries of the Trust.

In November, 2000, Debtor purchased a residence in Santa Rosa, California (the "Property") using his personal funds received in a settlement of a personal injury claim. Appellants assert that the Trust purchased the Property from Debtor on December 22, 2000. Appellants also assert that the Property is titled in Debtor as trustee under the Trust.

On December 27, 2005, Debtor as trustee transferred the Property to himself as an individual. That same day, a deed of trust was recorded in Sonoma County on the Property in consideration for a loan of $650,000 to Debtor from Primary Residential Mortgage, Inc.(the "First Deed of Trust"). Then, also on December 27, 2005, Debtor as individual transferred title to

---

[6](...continued)
opening briefs to 30-pages, double spaced, with 14-point type. The document submitted was 34 pages, single spaced, with 12-point type. Given the circumstances of this appeal, and because Appellees have not objected, the Panel has accepted and considered Appellants' brief.

[7] From the record, it is unclear what role ETS Services, LLC, plays in this drama. ETS is represented by the same counsel in this appeal as GMAC and Homecomings, and so we assume that ETS' interests are aligned with GMAC and Homecomings. The two non-appearing appellees, Investors Trust and David Izett, were apparently loan brokers involved in the financing of one or other of the deeds of trust.

-3-

1  the Property back to the Trust.  The beneficial interest under the
2  First Deed of Trust was later assigned to GMAC at some unspecified
3  time.

4      On March 13, 2007, Debtor as trustee again transferred the
5  Property to himself as an individual.  That same day, a deed of
6  trust was recorded in Sonoma County on the Property in
7  consideration for a home equity line of credit of $150,000 to
8  Debtor from Homecomings (the "Second Deed of Trust").  Appellees
9  contend that also on March 13, 2007, Debtor recorded transfer of
10 title to the Property back to the Trust, but documentation of that
11 transfer is not in the record.

12     Appellants admit that Debtor defaulted under the First Deed
13 of Trust but the date of default is not clear in the record.[8]

14     Debtor filed his a chapter 11 bankruptcy petition on
15 April 9, 2009.  Then, on May 4, 2009, Appellants filed a complaint
16 commencing the adversary proceeding that is the focus of this
17 appeal.  The complaint states claims by Appellants against
18 Appellees for breach of contract, fraud, violation of various
19 truth-in-lending and business practices laws, quiet title and
20 rescission of contract, and various tort and other state law
21 remedies.  The docket of the adversary proceeding reflects that
22 the complaint was served on GMAC's and Homecomings' attorney, but
23 not on GMAC and Homecomings.

24

25

26

27     [8]  It is also unclear whether Debtor defaulted in his
   capacity as trustee of the Trust or in his personal capacity as
   owner of the Property.  This goes to the merits of the dispute,
28 which we do not address in this appeal.

-4-

On June 12, 2009, Appellants filed a motion for entry of a default judgment against Appellees because they had not answered the complaint.  See Civil Rule 55(a), incorporated by Rule 7055.

On June 25, 2009, Appellants filed several documents in support of their motion for entry of default judgment.[9]  One document was the affidavit of debtor in support of the motion, in which he indicated that service of process was accomplished on May 11, 2009 on all defendants, and that GMAC and Homecomings were served through their attorney.

On July 17, 2009, Appellees moved to dismiss the adversary proceeding under Civil Rule 12(b)(6), incorporated in Rule 7012, arguing that Appellants' complaint failed to state a claim upon which relief could be granted.  As to the federal claims, Appellees alleged all were time-barred by the relevant statutes of limitation.

On July 21, 2009, Appellants filed a motion to recuse the bankruptcy judge because he was alleged to be biased against Debtor and because of various allegedly wrongful acts by bankruptcy court staff committed against Debtor that were done with the knowledge and consent of the bankruptcy judge.  The bankruptcy court denied the motion to recuse on August 6, 2009, stating the "allegations [are] not true, [and] would not permit recusal even if true.  Denied."[10]  This denial of recusal has not been appealed.

---

[9]  As discussed below, there is considerable dispute among the parties concerning the filings on June 25, 2009.

[10]  Adversary Proceeding Docket no. 20.

-5-

On August 6, 2009, Appellants responded to Appellee's motion to dismiss, principally arguing that they were under no obligation to respond because the Appellees were in default for failure to answer the complaint. Appellants later did respond to the motion to dismiss, generally disputing the assertions of Appellees.

A hearing on the motion to dismiss was held on September 4, 2009. Appellees were represented by counsel and Debtor appeared pro se. Debtor repeated the objection to the motion to dismiss that Appellees were in default for not answering the complaint. The bankruptcy court corrected Debtor, stating that no default had been entered. Hr'g Tr. 3:11 (September 4, 2009). There was no further argument and the bankruptcy court indicated that a decision would be forthcoming.

On September 4, 2009, the bankruptcy court entered its memorandum regarding the motion to dismiss. In it, the court concluded that Appellants' complaint was patently defective under Rule 7008 for having failed to state whether the proceeding was core or non-core and, if noncore, whether the Appellants would consent to entry of final judgment by the bankruptcy court. The bankruptcy court indicated that the proceeding was classically non-core in that it arises out of pre-bankruptcy action, was not based on bankruptcy law, and could have been prosecuted in a nonbankruptcy court.

The bankruptcy court also ruled that Appellees were not in default because Appellants had failed to effect valid service on them. See Beneficial Cal., Inc. v. Villar (In re Villar), 317 B.R. 88, 93 (9th Cir. BAP 2004). Although the bankruptcy court agreed with Appellees that the complaint failed to

-6-

articulate appropriate grounds for relief, the court found it better to exercise its discretion to permissively abstain.

The bankruptcy court entered its order on September 4, 2009, abstaining and dismissing the proceeding without prejudice. Appellants filed a timely appeal of that order on September 11, 2009.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(1) or (c)(1).

Appellees challenge the jurisdiction of this Bankruptcy Appellate Panel to hear and decide an appeal of the bankruptcy court's order for permissive abstention. Appellees based their challenge on 28 U.S.C. § 1334(d), which provides:

> Any decision to abstain or not to abstain made under subsection (c) (other than a decision not to abstain in a proceeding described in subsection (c)(2)) is not reviewable by appeal or otherwise by the court of appeals under section 158(d), 1291, or 1292 of this title or by the Supreme Court of the United States under section 1254 of this title.

By its terms, this statutory prohibition on review of a bankruptcy court's permissive abstention decision applies only to appeals to the United States Courts of Appeals under 28 U.S.C. §§ 158(d), 1291, and 1292, or to the United States Supreme Court under 28 U.S.C. § 1254. The statute does not prohibit district courts or bankruptcy appellate panels from hearing and deciding appeals from abstention decisions under § 28 U.S.C. 158(a) and (c). Indeed, the Panel has previously held that identical language in § 305(c) prohibiting the courts of appeals and the Supreme Court from hearing appeals from a bankruptcy court's

-7-

decision to abstain from the entire bankruptcy case under § 305(a) does not apply to district courts or bankruptcy appellate panels. Eastman v. Eastman (In re Eastman), 188 B.R. 621, 624 (9th Cir. BAP 1997). For the same reasons, we conclude that the Panel has jurisdiction to hear and decide this appeal of an order entered under 28 U.S.C. § 1334(c)(1).

## ISSUES

1.  Whether the bankruptcy court abused its discretion in permissively abstaining from deciding the adversary proceeding.

2.  Whether the bankruptcy court was biased against Debtor.

## STANDARD OF REVIEW

A bankruptcy court's decision to abstain is reviewed for abuse of discretion. Transcorp/Wilbur S. Avant, Jr. M.D. Rollover I.R.A. v. Pioneer Liquidating Corp. (In re Consolidated Pioneer Mortg. Entities), 205 B.R. 422, 424 (9th Cir. BAP 1997).

Federal judges are granted broad discretion in supervising proceedings, and a judge's behavior during proceedings justifies reversal if he abuses that discretion by exhibiting bias. Price v. Kramer, 200 F.3d 1237, 1252 (9th Cir. 2002).

In applying an abuse of discretion test, we first "determine de novo whether the [bankruptcy] court identified the correct legal rule to apply to the relief requested." United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009). If the bankruptcy court identified the correct legal rule, we then determine whether its "application of the correct legal standard [to the facts] was

-8-

(1) illogical, (2)implausible, or (3) without support in inferences that may be drawn from the facts in the record." Id. (internal quotation marks omitted).  If the bankruptcy court did not identify the correct legal rule, or its application of the correct legal standard to the facts was illogical, implausible, or without support in inferences that may be drawn from the facts in the record, then the bankruptcy court has abused its discretion. Id.

## DISCUSSION

### I.

**The bankruptcy court did not abuse its discretion in abstaining in and dismissing the adversary proceeding.**

A bankruptcy court may abstain from hearing an adversary proceeding under 28 U.S.C. § 1334(c)(1), which states in relevant part: "[N]othing in this section prevents a district court in the interests of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11, or arising in or related to cases under title 11."

The Ninth Circuit has provided guidelines for consideration by bankruptcy courts to determine if permissive abstention is appropriate.  The non-exclusive list of factors by which permissive abstention is proper are:

> (1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. §

-9-

1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden of [the bankruptcy court's] docket, (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of nondebtor parties.

Christensen v. Tucson Estates (In re Tucson Estates), 912 F.2d 1162, 1167 (9th Cir. 1990).

The bankruptcy court's memorandum identified several reasons justifying its decision to permissively abstain, and they are consistent with the Tucson Estates factors.

First, the bankruptcy court noted that the complaint was classically non-core, in that all the alleged claims against Appellees arose out of prebankruptcy conduct and transactions, were not based on bankruptcy law, and could have been prosecuted in a nonbankruptcy court. Indeed, the claims described in the complaint were principally state law claims that could have been pursued in state court. In addition, three of the four named plaintiffs in the action, and likely at least two of the defendants, were neither debtors nor creditors in Debtor's bankruptcy case.

Although the bankruptcy court did not comment on the impact its adjudication of this action might have on the efficient administration of the bankruptcy estate, or any burden it might impose on the bankruptcy court's docket, it did observe in the memorandum that Debtor "has done anything he can think of to remove the undersigned from the case." This observation is not

-10-

without support in the record as shown by Debtor's numerous motions for recusal, appeals, and lawsuits.[11] Moreover, the vitriolic rhetoric employed by Debtor in this appeal, charging the bankruptcy judge and court staff not just with error, but with criminal behavior, can not serve to advance the best interests of the creditors and the bankruptcy estate and must constitute a burden on the bankruptcy court to endure. As discussed below, the bankruptcy court has not exhibited bias or prejudice against Debtor, although Debtor believes that to be the case. All of this considered leads us to concur with the bankruptcy court that prosecution of this action in a different forum would be consistent with Tucson Estate's concern for the administration of the case and avoiding any undue burden on the busy bankruptcy court.

In sum, the bankruptcy court did not abuse its discretion when it decided it should permissively abstain from entertaining this action, under 28 U.S.C. § 1334(c)(1) and the factors as articulated in Tucson Estates.

---

[11] We take judicial notice that Debtor filed a civil suit against the bankruptcy judge, other judicial officers and court staff, and attorneys for Appellees in the District Court on January 7, 2010, alleging that the defendants violated his civil rights under 42 U.S.C. § 1983 and 1985(3) by their conduct in bankruptcy case 09-10970 and the adversary proceeding before us on appeal. The District Court dismissed the complaint, holding that the court and its staff had immunity from liability for any acts performed in their official capacity, Stump v. Sparkman, 435 U.S. 349, 356-57 (1978) (judge is absolutely immune), Mullis v. U.S. Bankruptcy Court, 828 F.2d 1385, 1394 (9th Cir. 1987) (extending judicial immunity to court staff). The attorneys' conduct in the course of litigation is privileged, Franklin v. Terr, 201 F.3d 1098, 1102 (9th Cir. 2000), Cal. Civ. Code § 47(b). Labankoff v. Jaroslovsky, case no. C-10-0089 SBA (N.D. Cal. March 26, 2010). This order has been appealed to the Ninth Circuit, case no. 10-16045.

-11-

1

II.

2
3

**Appellants have not shown that the bankruptcy court erred in refusing to enter default against Appellees, or that the bankruptcy court was biased against Debtor.**

4

Appellants' briefs focus almost exclusively on two arguments:

5

Appellees were in default for failing to answer the complaint, and

6

the bankruptcy court exhibited bias against Debtor.

7

A.

8

As to whether the bankruptcy court correctly declined to hold

9

Appellees in default, the court repeatedly explained to Debtor at

10

the hearing that mailing the summons and adversary complaint to

11

the creditors' attorney did not satisfy the requirements for

12

effective service of process.  Of course, the bankruptcy court was

13

correct.  Under Rule 7004(b)(3), a summons and complaint must be

14

served "[u]pon a domestic . . . corporation . . . by mailing a

15

copy of the summons and complaint to the attention of an officer,

16

a managing or general agent, or to any other agent authorized by

17

appointment or by law to receive service of process and, if the

18

agent is one authorized by statute to receive service and the

19

statute so requires, by also mailing a copy to the defendant.").

20

Therefore, without proof that the attorney has been designated as

21

an agent of the defendant corporation to accept process, service

22

on the attorney is not adequate.  In re Villar, 317 B.R. at 93.

23

Appellants bear the burden of proving that an attorney is an

24

agent authorized to receive service of process for a corporation.

25

Weston Funding, LLC v. Consorcio G. Grupo Dina, S.A. de C.V.,

26

451 F.Supp.2d 585 (S.D.N.Y. 2006).  Appellants assert that a

27

"Request for Special Notice," filed by GMAC's and Homecomings'

28

-12-

attorney in the main bankruptcy proceeding on April 23, 2009,
allowed them to serve only the attorney. In that document, GMAC
and Homecomings requested that copies of any notices or other
filings in the bankruptcy case be sent to its attorneys, Pite
Duncan, LLP.[12] However, the notice request contained no explicit
grant of authority for the attorneys to accept service of process
in an adversary proceeding, and Appellants provide no other
justification for their service on Appellees' attorney rather than
on Appellees.[13]

Our court of appeals has considered the circumstances under
which an attorney can be considered an implied agent for service
of process initiating a bankruptcy adversary proceeding. <u>Rubin v.
Pringle (In re Focus Media Inc.)</u>, 387 F.3d 1077 (9th Cir. 2004).
In <u>Focus Media</u>, the trustee commenced an adversary proceeding
against Focus Media's principal shareholder, Rubin. The summons

---

[12] Requests for notice of this sort are common in bankruptcy
cases. Rule 2002(g)(1) provides that notices of the events in
bankruptcy cases governed by that Rule are to be mailed to parties
at the address the party "directed in its last request filed in
the particular case." However, Rule 2002 notices deal with events
and proceedings such as court hearings, assets sales, claims
filing deadlines, and other administrative matters. <u>See</u>
Rule 2002(a) and (b). The requirements for service of process in
an adversary proceeding are established by Rule 7004, not
Rule 2002.

[13] Indeed, the notice request could actually be interpreted
as barring the attorneys from accepting service of process. The
last line of the request provides that Appellees' rights are
"expressly reserved . . . with no purpose of confessing or
conceding jurisdiction in any way by this filing." Acceptance of
process by the attorney would be a concession of one of the
elements of personal jurisdiction over the Appellees. <u>Rubin v.
Pringle (In re Focus Media Inc.)</u>, 387 F.3d 1077, 1081 (9th Cir.
2004).

-13-

and complaint were served on Rubin's attorney, Mousseau, because the trustee did not have an address for Rubin.  The court ruled,

> We hold today that in an adversary proceeding in bankruptcy court, a lawyer can be deemed to be the client's implied agent to receive service of process when the lawyer <u>repeatedly represented</u> that client in the underlying bankruptcy case, and where the totality of the circumstances demonstrates the <u>intent of the client</u> to convey such authority.

<u>Id.</u> at 1079 (emphasis added).  The <u>Focus Media</u> court applied this holding to the facts in that case:

> First, as found by the bankruptcy court, Mousseau was extensively involved in the underlying bankruptcy proceeding and on several occasions participated on Rubin's behalf. . . .  Second, there is evidence that Rubin previously had been served with papers in the bankruptcy proceeding in care of Mousseau, and there is no record of Rubin objecting.  Finally, and <u>most importantly</u>, Rubin's own declaration filed in a state court proceeding and signed shortly before the commencement of the adversary proceeding, states: 'Geoffrey C. Mousseau, Attorney at Law has been general counsel for Thomas Rubin since September 27, 2000. In his capacity as my general counsel, Geoffrey Mousseau has been consulted on a variety of legal matters and has been made privy to confidential financial, tax and legal information related to myself, the dba and Focus.  Mr. Mousseau has assisted me with respect to the pending Focus bankruptcy, as well as the prior actions brought by Sears and other media outlets in State Court.'

<u>Id.</u> at 1083-84.

Unlike the <u>Focus Media</u> case, the attorneys in this appeal were not "extensively involved" in the bankruptcy case.  Indeed, the only appearance of Appellees' attorneys in the main bankruptcy case before service of process on them was the request for notice on April 23, 2009, a mere eighteen days before service on them was attempted.  There was never any service on the attorneys in lieu of their clients in the main bankruptcy case before the attempted service in the adversary proceeding.

-14-

And, in the words of the court of appeals, "most importantly," there was direct evidence in the <u>Focus Media</u> case from the principal, Rubin, that impliedly conferred agency authority on the attorney.  The court of appeals left no ambiguity on this point: "An agent's authority to act cannot be established solely from the agents actions.  Rather, the authority must be established by <u>an act of the principal</u>.  Rubin's declaration . . . manifests the requisite evidence of authority conveyed by the principal."  <u>Id.</u> at 1084.  There is no evidence in the record of this appeal or the bankruptcy court dockets directly from GMAC or Homecomings discussing their relationship or conferring any agency authority on their attorneys.[14]

Although Appellants have consistently and principally argued that service of process on the attorneys for GMAC and Homecomings satisfied Rule 7004(b)(3)'s requirements for service on a corporation, they have also sporadically argued a Supplemental Certificate of Service ("Supplemental Certificate") exists showing that GMAC and Homecomings were served on May 13, 2009, at their proper addresses, on corporate officers, including the chief executive, and on agents authorized to receive process.  However, our review of the record shows no probative evidence to support the actual existence or validity of this document.

---

[14]  Although <u>Focus Media</u> dealt with service of process on the attorney for an individual, the court made no distinction between service on the attorney for an individual and service on attorney for a corporation.  The court cited as persuasive the opinion of the Federal Circuit in <u>United States v. Ziegler Bolt & Parts Co.</u>, 111 F.3d 878 (Fed. Cir. 1997), a case where the attorney for a corporation was served and the Federal Circuit ruled, "Defendant's attorney probably will not be deemed an agent appointed to receive process absent a factual basis for believing that an appointment of this type has taken place."  <u>Id.</u> at 881.

-15-

As noted earlier, an Alias Summons was issued by the Clerk on May 5, 2009, against Appellees. An executed Certificate of Service was filed on May 18, 2009, certifying that Nino Gulordava mailed the summons and complaint by first class mail to GMAC and Homecomings at their attorney's address on May 11, 2009. The next relevant entry in the bankruptcy court's docket after the May 11 certificate was on June 12, 2009, when Debtor filed his request for entry of default. Although in his request Debtor does not refer specifically to the date when service was accomplished, his affidavit states that "more than 30 days" had passed since GMAC and Homecomings had been "served." In Debtor's second affidavit, attached to Form B-261, also dated June 12, 2009, Debtor states "31 days has expired since service was accomplished." Both of these references can only apply to service on the attorney accomplished on May 11, 2009.

The next relevant entries in the docket are for June 25, 2009. Debtor has alleged in his briefs in this appeal (but never in an affidavit or sworn declaration to the bankruptcy court or this Panel) that a clerk of the bankruptcy court's staff had destroyed or falsified documents, including the alleged May 13, 2009 Supplemental Certificate. There is no docket entry on June 25, 2009, relating to the Supplemental Certificate. On the contrary, there is a third affidavit submitted by Debtor on that date in support of entry of default.[15] This affidavit provides a meticulously detailed list of elements for the bankruptcy court to consider in ordering a default. In one such item, Debtor again

---

[15] Affidavit in support of application for entry of default. Entered June 25, 2009. Dkt. no. 10.

-16-

asserts that service was accomplished on the defendants via their attorneys on May 11, 2009. There is no reference in this affidavit to the alleged May 13, 2009 Supplemental Certificate. On the other hand, the affidavit contains a detailed justification for service on the attorneys rather than their clients:

> Defendants GMAC and Homecomings Financial did request special notice as per Docket Item No. 12 of Bankruptcy Case No. 09-10970 dated 4/23/09 which clearly listed GMAC's attorney's address and preemptive requested [sic] for jury trial. This was filed before the adversary proceeding was even filed or served. This was the address used by plaintiff to contact GMAC and its subsidiary Homecomings Financial [] through its attorney [of] record Steven W. Pite, Jose A. Garcia, Pite Duncan attorneys for GMAC Mortgage, LLC 4375 Jutland Drive, Suite 200, San Diego, CA 92117. These attorneys should have kept track of this bankruptcy but apparently did not. Why should they when they can always move to strike a default especially from a pro se[?] It is the Defendant's attorneys' fault for not following this bankruptcy case and adversary proceeding. NOT THE FAULT OF PLAINTIFFS even if they are in pro per.

Dkt. no. 10 at 1-2.

The next relevant docket entry is for July 21, 2009, when Debtor brings to the attention of the bankruptcy court his allegations that "critical proofs of service" were destroyed by the clerk's staff. Attached to his July 21 Motion to Compel Entry of Default at Exhibit 2 was the alleged Supplemental Certificate. The certificate submitted on July 21 alleged process had been mailed to seven addresses, including that of GMAC's chief executive and a designated agent for service. Homecomings was allegedly served at three addresses, including a designated agent for service of process. But unlike his statements relating to the May 11 service, Debtor did not support the validity or relevance of the alleged Supplemental Certificate with an affidavit or other admissible evidence.

-17-

The next relevant docket entry, no. 21, on August 6, 2009, was Appellants' Objection to Having to Reply to a Defaulted Party's Motion to Dismiss. Appellants stated that service was accomplished on May 11, and make no reference to a service on May 13.

In summary, based on the entries in the bankruptcy court's docket and the affidavits and pleadings filed in the record, the following appeared to the bankruptcy court regarding Appellants' efforts to effect service of process:

- The May 11 certificate of service was filed on May 18, indicating that service by mail was effected on the attorneys for GMAC and Homecomings, not on the corporations' qualified officers or agents. There was no return of the alleged May 13 Supplemental Certificate in the docket. The first reference in the docket to the May 13 Supplemental Certificate occurred over two months after the alleged service, on July 21, 2009.

- Three affidavits from Debtor were filed, all of which represent that service of process occurred on May 11, and none of which refer to a May 13 service. The third affidavit was filed on June 25, 2009, the same day Debtor alleges that the clerk's staff destroyed the May 13 Supplemental Certificate. However, this third affidavit also asserts that service was accomplished on May 11, makes no reference to any service on May 13, and contains a strong statement in support of service of process on attorneys in lieu of their corporate clients.

- There was no affidavit or any other evidence than Debtor's late allegations in his pleadings supporting the existence of the alleged May 13 Supplemental Certificate.

-18-

Given this record, the bankruptcy court did not err in deciding that Appellants failed to demonstrate that they properly served the defendant-corporations as required by Rule 7004(b)(3), and therefore, that they were entitled to entry of a default.

B.

Appellants argue at length in their briefs that the bankruptcy court was biased against Debtor. An individual asserting judicial bias has an exceptionally heavy burden and must "overcome a presumption of honesty and integrity in those serving as adjudicators." Withrow v. Larkin, 412 U.S. 35, 47 (1975).

In the separate memorandum disposing of the appeal of the conversion of Debtor's bankruptcy case, Labankoff v. U.S. Trustee, (BAP no. NC-09-1300), we have noted several examples of the bankruptcy court's firm, but courteous, admonitions to Debtor concerning his failure to comply with Rules and procedure during the bankruptcy case.[16] Although the bankruptcy court used firm

_____

[16] The excerpts in this appeal include only one, three-page transcript from the adversary proceeding. Again, in our view, the bankruptcy court showed patience and firmness with Debtor, in spite of Debtor's comments to the court:

> DEBTOR: Pro se objects to hearing defendant's motion to dismiss, because de facto defendant is in default per FRCP Rule 55(a). . . .

> THE COURT: No default has been entered.

> DEBTOR: Thanks to the Court's sidestepping it. Thank you very much. I believe this —

> THE COURT: All right.

> DEBTOR: — belongs to —

> THE COURT: I will have a written decision for you in a couple of days.

(continued...)

-19-

language in criticizing Debtor for failure to comply with bankruptcy procedure and rules, in general, comments made by a court in the course of judicial proceedings are rarely sufficient to establish bias requiring recusal. <u>Pau v. Yosemite Park & Curry Co.</u>, 928 F.2d 880, 885 (9th Cir. 1991) (district court's "gruff" demeanor was not sufficient to establish bias); <u>United States v. Conforte</u>, 624 F.2d 869, 881 (9th Cir. 1980) (court's comments on insufficiency of evidence before completion of evidentiary hearing insufficient to find bias and require recusal). Instead, a finding of judicial bias must stem from some personal interest in the case or an extrajudicial source. <u>Liteky v. United States</u>, 510 U.S. 540, 552-53 (1994).

The "extrajudicial source" rule is implicated when bias originates outside the courtroom. <u>United States v. Grinnell Corp</u>., 384 U.S. 563, 583 (1966) (explaining that the "alleged bias and prejudice to be disqualifying must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case."); <u>United States v. Bray</u>, 546 F.2d 851, 857 (10th Cir. 1976) ("unjudicious" remarks such as referring to counsel's comments as ridiculous, or describing a witness as pathetic are not extrajudicial, but "reflected the judge's attitude and reactions to specific incidents occurring at trial").

There is no evidence in the record before us that the bankruptcy judge had any personal interest, financial or otherwise, in this case. Similarly, there is no indication in the

---

[16](...continued)
Hr'g Tr. 3:11-17 (September 4, 2009).

-20-

record that the bankruptcy judge's opinions, expressed during hearings or in written memoranda in the case, were based on any information or events originating outside the bankruptcy court proceedings.

Appellants' claim of judicial bias, if it is valid at all, must fall within a narrow exception to the rule that bias must arise either personally or extrajudicially:  the so-called "pervasive bias" exception.  The United States Supreme Court instructs that "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a <u>deep-seated favoritism or antagonism that would make fair judgment impossible</u>."  <u>Liteky</u>, 510 U.S. at 555 (emphasis added).  As one treatise explains:

> This pervasive bias exception to the extrajudicial source factor arises when a judge's favorable or unfavorable disposition toward a party, although stemming solely from the facts adduced or the events occurring at trial, nonetheless becomes so extreme as to indicate the judge's clear inability to render fair judgment.  <u>However, the exception is construed narrowly; bias stemming solely from facts gleaned during judicial proceedings must be particularly strong in order to merit recusal.</u>

12 MOORE'S FED. PRAC.- CIV. § 63.21[5] (Matthew Bender, 3d ed. 2007) (emphasis added); <u>accord</u> <u>In re Huntington Commons Assocs.</u>, 21 F.3d 157, 158 (7th Cir. 1994) (judge is not required to be impervious to impressions about litigants; impatience, admonishments to defendant, adverse rulings, and vague references to possible predisposition not remotely sufficient to meet requirement of

-21-

deep-seated and unequivocal antagonism that would render fair judgment impossible).

We have carefully examined the record in this appeal and can find no evidence of any "deep-seated antagonism" shown by the bankruptcy court against Debtor. On the contrary, based upon our review of the complaint, the bankruptcy court likely could have dismissed this adversary proceeding for failure to allege a valid claim for relief under Civil Rule 12(b)(6). Instead, the bankruptcy court concluded that, with some help, Debtor and Appellants might be able to offer up a cogent case. Therefore, the court abstained and dismissed the action without prejudice so that Debtor could perhaps proceed in another forum. This act of discretion by the bankruptcy court does not demonstrate any pattern of "deep-seated antagonism" against Debtor.

In short, Appellants have not shown that the bankruptcy court was biased against Debtor.

**CONCLUSION**

We AFFIRM the order of the bankruptcy court abstaining and dismissing the adversary proceeding without prejudice.

-22-